# EXHIBIT A

## IN THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

| | |
|---|---|
| RAYMOND GIBSON, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff | **CLASS REPRESENTATION** |
| v. | JURY TRIAL DEMANDED |
| LYNN UNIVERSITY, Inc., | |
| Defendant | |

### CLASS ACTION COMPLAINT

Plaintiff Raymond Gibson, individually and on behalf of all other similarly-situated persons, brings this class action complaint against Lynn University, Inc. Mr. Gibson makes the following allegations upon personal knowledge as to his own acts and upon information and belief and his attorneys' investigation as to all other matters.

### NATURE OF THE ACTION

1. This is a class action brought on behalf of Mr. Gibson and other similarly-situated persons ("the Class"), who paid tuition and fees for the Spring 2020 academic term to Lynn University ("Defendant" or "Lynn"). Plaintiff and the Class (i) did not receive their bargained-for educational and other services and experiences, for which they paid fees; and (ii) have not been refunded a properly prorated portion of their tuition and fees after the University System ceased providing such services to students during the Spring 2020 academic semester due to the spread of Coronavirus Disease 2019 ("COVID-19").

2. As a result of Defendant's wrongful acts and unfair business practices alleged herein, Mr. Gibson and the Class have systematically been denied, and therefore seek: (i) a proper,

prorated refund or reimbursement for the unused services for which they paid in the form of various university fees; and (ii) a proper, prorated refund or reimbursement for the decreased value of the education they received as a result of classes transitioning from in-person/on-campus instruction to an entirely remote, virtual learning format.

**PARTIES**

3.   Plaintiff Raymond Gibson is a resident of Boca Raton, Florida, and is an undergraduate student studying criminal justice at the University. He resides off-campus in Boca Raton, Florida.

4.   Defendant Lynn University, Inc., is a domestic, for-profit corporation (FEI/EIN Number ▉▉▉▉▉▉) with its principal place of business located at 3601 N. Military Trail, Boca Raton, Florida, 33431. It may be served with process at its principal place of business through its registered agent Mr. Michael Antonello.

5.   Defendant operates Lynn University, a private institution in Boca Raton, Florida, attended by approximately 3,200 students with an average cost of attendance exceeding $50,000 per academic year.

**JURISDICTION AND VENUE**

6.   **Subject Matter Jurisdiction**. This Court has subject matter jurisdiction over this action because it is an action for damages in excess of $30,000.00, exclusive of interest, attorney's fees, and costs.

7.   **Subject Matter Jurisdiction**. This Court also has subject matter jurisdiction pursuant to Section 86.011, *Florida Statutes*—governing declaratory judgments—which confers jurisdiction the circuit and county courts of Florida within their respective jurisdictional amounts.

8.   **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because Defendant is incorporated under Florida law, is registered to do business in the State of Florida, and maintains its principal place of business within Palm Beach County, Florida.

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

9.  **Venue.** Pursuant to Section 47.011, Florida Statutes, venue is proper in Palm Beach County, Florida, because Defendant's principal place of business is located in Palm Beach County, and the events giving rise to this action occurred in Palm Beach County.

## FACTUAL ALLEGATIONS

10.  Universities do not merely sell credit hours and diplomas as one would sell some common consumer commodity. They sell an experience—one enriched both personally and academically through social interaction and involvement with faculty and with other students.

11.  Lynn is no different in this respect, as images from its student catalog graphically illustrate.[1]



---

[1] Lynn. U. *Academic Catalog* (2018-2019) at 14, 18, 81: https://www.lynn.edu/uploads/pdf/2018-19-academic-catalog.pdf

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

12.   Lynn is a private institution that enrolls more than 3,000 students—approximately
2,400 undergraduates and more than 800 graduate and doctoral students.[2] It boasts a rich and
lively on-campus student experience, as evidenced by the Campus Life section of its student
catalog:[3]

> The Center for Student Involvement is committed to providing
> a variety of activities that complement the university's academic
> program. Students can choose activities that will contribute to
> their personal development and enjoyment: student government,
> service clubs, Greek life and participation in any number of
> special interest organizations. Social activities include game
> shows, dances, comedy acts, live music, cultural events,
> international festivals, films, pool parties, sports days, award
> dinners, and novelty entertainment.

> Students are encouraged to participate in a wide range of
> intramural programs, including basketball, flag football, soccer,
> volleyball, sand volleyball, kickball, whiffle ball, dodgeball,
> powder puff, ultimate Frisbee, tennis, billiards, ping pong, and
> others. The Fitness center is available to all enrolled students
> which includes fitness classes and other programs.

13.   Lynn President Kevin Ross's introductory message to students lauds the Lynn
university/campus experience: "Through our innovative Dialogues curriculum, student-
centric technology features and campus design, *we have reimagined the college experience and
delivered on it*…. Our university has also been consecutively named one of the most innovative
schools in the country by U.S. News & World Report for our *whole new style of teaching and
learning*."[4]

14.   Lynn offers students an experience beyond mere class attendance and the
acquisition of credit hours, and this is central to its value: "The university's location in this
hub provides a dynamic medium for educational exchange and learning, including excellent
internship opportunities.[5]

---

[2] Lynn U., *Lynn Facts*: https://www.lynn.edu/about/lynn-facts
[3] Lynn U. *Academic Catalog* (2018-2019) at 19: https://www.lynn.edu/uploads/pdf/2018-19-academic-catalog.pdf
[4] *Id.* at 15 (emphasis added).
[5] *Id.* at 17.

15.   Likewise, Lynn places value on its students' ability to do more than study: "No matter the time of day or day of week, we've got something you won't want to miss. Pursue academic interests or exercise extracurricular passions on campus or close to home with Lynn's clubs, groups and activities."[6] Students are encouraged to enrich their educational experience through opportunities to "get involved" and to "[p]articipate in social, cultural, intellectual, leadership and service activities that address diverse needs and interests . . . that help our students transition smoothly into college life, be a part of the Lynn tradition, grow personally, and feel at home at Lynn."[7]

16.   Lynn offers numerous opportunities to engage in student organizations involving culture, leadership, academics, honor societies, hobbies and interests, sports, and fraternities and sororities.[8]

17.   In short, Lynn—like any reputable university—significantly enhances its value to students by offering a rich and communal social and academic experience.

18.   Plaintiff was enrolled as a, full-time student at Lynn during the Spring 2020 academic term, and he attended Lynn in-person rather than online.

19.   Plaintiff's tuition for Spring 2020 totaled $18,340.00 and he was charged $1,200.00 in fees, including a Technology Fee ($200.00), a Student Services Fee ($500.00), and a Course Materials Fee ($500.00).

20.   Plaintiff covered the full amount of his tuition and fees through the combination of a scholarship, paying out-of-pocket, and incurring loan debt.

21.   On January 21, 2020, Lynn's undergraduate and graduate spring semester began and was slated to end May 9, 2020.[9]

---

[6] Lynn U., *Clubs & organizations*: https://www.lynn.edu/student-life/clubs-and-organizations
[7] Lynn U., *Get involved*: https://www.lynn.edu/student-life/student-involvement-programs
[8] See generally https://www.lynn.edu/about/lynn-facts
[9] Lynn U., *Academic Calendar*: https://www.lynn.edu/academics/academic-calendar

Class Action Complaint - 5

22.   In response to COVID-19, Lynn announced on March 10 its intention to test its "technical capabilities for online classes starting Monday, March 16 through Wednesday, March 18, which "replace[d] in-person, day classes for undergraduate students" but did not "include performance-based courses or labs such as collaborative piano, dance or chemistry lab."[10]

23.   On March 12, Lynn postponed mass gatherings.[11]

24.   On March 13, Lynn announced that it would move all undergraduate and graduate classes online beginning Monday, March 16[12] and that this would continue through the end of the semester (May 25).[13] Students were allowed to depart campus to study from home and all athletic competitions were suspended for the remainder of the spring semester.[14]

25.   On March 16, all classes were moved to online and all small group activities were limited to 10 or fewer people.[15]

26.   On March 17, Lynn limited campus access to only students, employees, and registered guests.[16] On the same day, Lynn announced that it would close the residence halls on March 21, 2020.[17]

27.   On March 20, Lynn announced that it would close its campus starting March 23 until further notice and that "most other university operations will continue virtually."[18]

28.   On March 21, residence halls were closed and student employment was suspended.[19] All students were moved off campus.[20]

_____

[10] Lynn U., *Online course testing: March 16-18*: https://alert.lynn.edu/

[11] Lynn U., *Updates to campus events*, Mar.12, 2020: https://alert.lynn.edu/

[12] Lynn U., *Current update*, Mar. 16, 2020: https://alert.lynn.edu/

[13] Lynn U., *Lynn University health and safety measures*: https://alert.lynn.edu/ (residence halls, libraries, tutoring and student dining and other services were to remain open).

[14] Lynn U., *Lynn University health and safety measures*: https://alert.lynn.edu/

[15] Lynn U., *Current update*, Mar. 16, 2020: https://alert.lynn.edu/

[16] Lynn U., *Update on campus operations*, Mar. 17, 2020: https://alert.lynn.edu/

[17] Lynn U., *Coronavirus update: residence halls*, Mar. 17, 2020: https://alert.lynn.edu/

[18] Lynn U., *Campus closed starting March 23; Services continue virtually*, Mar. 20, 2020: https://alert.lynn.edu/

[19] Lynn U., *Update on student employment*, Mar. 19, 2020: https://alert.lynn.edu/

[20] Lynn U., *Housing update—Belongings left behind*, Mar. 23, 2020: https://alert.lynn.edu/

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

29.   On March 23, campus was closed until further notice.[21] Lynn indicated that the campus would not reopen before August, 2020.[22]

30.   On April 2, Lynn reaffirmed that its academic and other student services were to continue virtually.[23]

31.   All graduate and undergraduate programs were and are to be held online through the end of the summer semester.[24]

32.   This included transitioning "nearly 1,000 courses online"—courses that were designed to be conducted in-person and led by instructors who were accustomed to in-person instruction.[25]

33.   Altogether, less than half of the Spring 2020 term was held in person ( January 21–March 13) while the remainder was conducted virtually, without access to campus or campus-based services and facilities for which students had paid (March 16–May 25).

34.   The entire Summer 2020 term will be held virtually without access to campus or campus-based services and facilities for which students have paid.

35.   Since March 16, Lynn has offered less valuable online classes instead of the bargained-for in-person instruction to those students enrolled for the Spring and Summer 2020 semesters.

36.   Consequently, beginning March 16, Defendant ceased providing the full value of the education, services, facilities, technology, access, or opportunities for which Mr. Gibson and the Class paid.

37.   Plaintiff does not impugn Defendant for taking measures to protect the public health; but Defendant must acknowledge that the education and services it now provides to

---

[21] Lynn U., *Is campus open?,* Frequently asked questions about the coronavirus: https://www.lynn.edu/coronavirus-faq

[22] Lynn U., *Housing update—Belongings left behind*, Mar. 23, 2020: https://alert.lynn.edu/

[23] Lynn U., *Fla. Gov. DeSantis' "safer at Home" executive order*, April 2, 2020: https://alert.lynn.edu/

[24] Lynn U., *Is Lynn still holding classes on campus?*, Frequently asked questions about the coronavirus: https://www.lynn.edu/coronavirus-faq

[25] Lynn U., *A message from President Kevin M. Ross*, Mar. 26, 2020: https://alert.lynn.edu/

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

students lack the full value of those for which Plaintiff and the Class paid. Not only is a fully online college experience inferior, both socially and academically, to the in-person experience for which Plaintiff and the class paid; but Lynn's ersatz online courses now offered to students are inferior to online courses that were conceived as such in the first instance.

38.   Lynn describes its preexisting online course of study as "highly personalized," and it says "Lynn's online degree is customized, not commoditized."[26] The same is not true for the many hundreds of courses converted mid-semester from in-person to virtual formats. The new remote classes were not designed to operate as such from the start; thus, they are inferior not only to an on-campus experience, but to the preexisting online-only curriculum.

39.   Indeed, Defendant recognizes that even its "customized" preexisting online education is less valuable than an in-person education, as reflected by the difference in tuition Lynn has traditionally charged to online-only students. Before the COVID-19 outbreak, Lynn charged online students $300.00 per credit hour[27] while charging students who attended in person $1,222.00 per credit hour—i.e., Lynn charged more than four times as much for in-person attendance as it charged for online attendance.[28] Similarly, students attending in person paid more than $1,000.00 per semester for various fees and services, while online students paid only $100.00 for various fees and services.[29]

40.   Similar disparities exist with respect to the Summer 2020 term as well, for which in-person attendance costs $1,060.00 per credit hour—more than three times as much as the cost-per-credit-hour for online attendance.[30]

41.   Lynn's remote learning classes deprive students of in-person learning from their peers and school faculty. The move to these remote classes also deprives students of access to the facilities, materials, and opportunities offered only on Lynn's physical campus.

---

[26] https://www.lynn.edu/academics/areas-of-study/online
[27] Lynn U., *Online tuition*: https://www.lynn.edu/admission/tuition-aid/online
[28] Lynn U., *Undergraduate tuition*: https://www.lynn.edu/admission/tuition-aid/undergraduate
[29] *Id.*
[30] *Id.*

Class Action Complaint - 8

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

42.   The remote classes provided to Mr. Gibson and his peers not equivalent to the in-person campus experience that Mr. Gibson and other Lynn students chose for their university education. The tuition and fees Lynn charged were predicated on access to and constant interaction with and feedback from peers, mentors, professors and guest lecturers; access to technology, libraries, and laboratories; spectator sports and athletic programs; student government and health services; and extracurricular groups and learning, among other things.

43.   The remote classes offered to Mr. Gibson and his peers are of substantially lower quality and are objectively worth less than the virtual courses Lynn typically offers which are intended to be online from inception, and the preexisting online courses were valued by Lynn at a fraction of the value of in-person attendance, which is reflected in the disparity between tuition and fees described above.

44.   The remote classes created in response to COVID-19 are those that were originally designed to be taught using some level of face-to-face interaction. These classes are not consistent and use different remote technologies of varying quality and consistency.

45.   These haphazard remote courses experience numerous problems and deficiencies and clearly are less valuable than the online classes.

46.   In short, Lynn's online students have online courses designed to be fully virtual but miss out on the benefits of the campus experience. Mr. Gibson and the Class have been provided with a second-rate online substitute.

47.   Despite its advance knowledge that the classes it would offer in Summer 2020 would be online, Lynn failed to take appropriate steps to improve the quality of those courses and failed to discount the pricing of those courses, or the required student fees, to account for the fact that it would not be providing promised in-person and on-campus services, amenities and experiences.

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

48.   Lynn has offered a fractional refund of room and board (after first deducting institutional housing aid and other housing benefits); but it has neither offered nor given any credit or refund of tuition or fees.

49.   Through this lawsuit, Mr. Gibson seeks—for himself and the other Class members—Defendant's disgorgement and a refund of a percentage of tuition and fees reflecting the fact that students can no longer attend classes in person and are instead given a sub-par online learning experience that lacks access to activities and services for which they paid.

50.   Mr. Gibson and other Class members have not realized and cannot realize the full value of the benefits of the education, services, and other experiences that they were promised and for which they paid.

51.   Despite failing to fulfill its obligations to students throughout the University System, Defendant has retained Plaintiff's and the Class members' full tuition and fees.

52.   Defendant has failed to compensate Mr. Gibson and the Class for the diminished value and damages they have suffered as a result of Defendant's actions.

53.   Specifically, Defendant has failed to refund or reimburse Mr. Gibson and the Class the prorated portion of tuition and fees necessary to compensate them for the difference in value between what they paid for and what they received.

54.   Essentially, Plaintiff and the Class have paid Defendant for access to buildings they can no longer enter, technology the university no longer provides, and activities and services that are no longer available.

55.   Plaintiff and the Class, in paying tuition and fees required by the Defendant, reasonably expected education and services of a particular quality and value commensurate with the amount of tuition and fees each paid.

56.   However, Plaintiff and the Class received education and services of a different and substantially lesser value—one with a higher effective cost—than they reasonably expected.

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

57.   Accordingly, Plaintiff and the Class did not realize the benefit of the bargain and their expectations were not met.

58.   Plaintiff and the Class effectively paid substantially more than the market value represented by the price bargained for by way of tuition and fees. Plaintiff and the Class bargained with Defendant on a particular market value for the education and services they purchased. But because Defendant delivered only a portion of their reasonably expected value, Plaintiff and the Class paid a higher price than reflected in the market price to which they and Defendant had agreed, and received a level of education and services that was of lesser value than was represented to, and reasonably anticipated by, Plaintiff and the Class.

59.   For these reasons, the education and services delivered are worth less than Plaintiff and the Class paid for them.

60.   Plaintiff and the Class therefore lost money as a result by not receiving what they reasonably believed they were paying for while Defendant realized a commensurate unearned gain because it did not deliver to Plaintiff and the Class what it led them to believe they would receive.

61.   Plaintiff and the Class are entitled to disgorgement of those portions of their payments for unused services and are entitled to a prorated refund of their tuition for classes that are worth less than they paid.

62.   Defendant's refusal to refund any portion of tuition impacts all Class members and their losses are capable of calculation on a classwide or a subclass basis.

63.   Likewise, Defendant's refusal to refund any portion of fees and costs impacts all Class members and their losses are capable of calculation on a classwide or a subclass basis.

## CLASS ACTION ALLEGATIONS

64.   Pursuant to Florida Rule of Civil Procedure 1.220(a), (b)(2), (b)(3), and/or (c)(4), Plaintiff brings this action for damages, equitable relief and disgorgement on behalf of himself and the following Class:

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

> All Florida residents who paid on behalf of themselves or another tuition or
> fees for in-person education at Lynn University for the Spring or Summer 2020
> term.

65.   Excluded from the Class are officers and employees of Lynn University, Inc., and the judicial officers and Court employees assigned to this case. Plaintiff reserves the right to modify or amend the above Class definition, including the right to divide Class members into subclasses, as may be appropriate.

66.   A class action is a superior means to ensure the fair and efficient adjudication of this case. The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against the Defendant. Moreover, individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and the Court itself. By contrast, by proceeding as a class action, the claims at issue can be adjudicated efficiently through economies of scale.

67.   **Numerosity**. In accordance with Florida Rule of Civil Procedure 1.220(a)(1), the members of the proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Although the precise number of Class members is unknown presently to Plaintiff, the Class certainly exceeds 3,000 members who are ascertainable through enrollment and other records maintained by Defendant. Class members may be notified this action by recognized, Court-approved notice methods.

68.   **Commonality and Predominance**. In accordance with Florida Rule of Civil Procedure 1.220 (a)(2) (commonality) and Florida Rule of Civil Procedure 1.220 (b)(3) (predominance), this action involves questions of law and fact common to the Class that predominate over any individual questions specific to any Class member. These include:

    a.   whether Defendant accepted money from the Class;

    b.   whether Defendant retained money from the Class for services it did not render, or only partially rendered;

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

c.   whether Defendant thus wrongfully retained benefits conferred upon it by the Class;

d.   whether Defendant entered into a contract with the Class;

e.   whether Defendant breached its contract with the Class;

f.   whether Defendant benefited from the money it accepted from the Class;

g.   whether the educational and other services Defendant provided to the Class were commensurate with their value and, therefore, whether the Class received the benefit of their bargain with Defendant as to tuition or fees paid to cover the relevant time period;

h.   whether certification of the Class is appropriate under Florida Rule of Civil Procedure 1.220;

i.   whether and the extent to which Defendant is subject to declaratory or injunctive relief;

j.   whether Class members are entitled to damages and other relief; and

k.   the amount and nature of relief to be awarded to Plaintiff and the other Class members.

69.   **Typicality**. Pursuant to Florida Rule of Civil Procedure 1.220(a)(3), Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members each paid for certain costs associated with the Spring and Summer 2020 semesters, but were not provided the full range or value of education and services that those costs were meant to cover. Each suffered losses and damages in the form of their lost tuition, fees, and other monies paid to Defendant, and the claims all arise from a single course of conduct. There are no defenses available that are unique to the Plaintiff.

70.   **Adequacy of Representation**. In accordance with Florida Rule of Civil Procedure 1.220(a)(4), Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the other proposed Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and intends to prosecute this action vigorously on behalf of her fellow Class members. Plaintiff has no interests that are antagonistic to those of the Class and Plaintiff will fairly and adequately protect the proposed Class members' rights.

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

## COUNT I
### Breach of Contract

71.   Plaintiff realleges and incorporates into this count the facts alleged in ¶¶ 1–70.

72.   Plaintiff brings this claim individually and on behalf of the other members of the Class.

73.   Plaintiff and the Class had the capacity to enter into and in fact entered into binding contracts with Defendant.

74.   Defendant offered and Plaintiff and the Class accepted—in exchange for paying their respective tuition and fees—on-campus educational and social facilities, services, and experiences for either or both the Spring and Summer 2020 semesters.

75.   Defendant breached its contracts when it failed to provide the requisite level of on-campus educational and social facilities services, and experiences.

76.   Defendant has retained tuition and fee payments by Plaintiff and the Class for the full 2020 Spring and Summer semesters and has failed or otherwise is unable to perform, i.e., to provide the promised benefits in full.

77.   By contrast, Plaintiff and the Class fulfilled their end of the bargain by paying the monies due and owing in the form of full tuition and fees.

78.   Plaintiff and the Class have otherwise satisfied all conditions precedent to the maintenance of this action.

79.   Defendant's breach of these contracts is material in each instance and has resulted in Plaintiff and members of the Class suffering compensatory damages including, but not limited to, those described in ¶¶ 49–63.

80.   Plaintiff and the Class have been deprived of the value of the services that the tuition and fees were intended to cover.

81.   WHEREFORE, Plaintiff and the Class seek all damages and equitable relief to which they may be entitled.

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

## COUNT II
### Contract Implied in Law (Restitution/Quasi-Contract)

82.   Plaintiff realleges and incorporates into this count the facts alleged in ¶¶ 1–70.

83.   Plaintiff brings this claim individually and on behalf of the Class.

84.   Plaintiff and the Class have conferred a benefit on Defendant in the form of tuition and fees for either or both the Spring and Summer 2020 semesters.

85.   Defendant was aware of this benefit, voluntarily accepted it, and has retained this benefit, to which it is not entitled, at the expense of Plaintiff and the Class.

86.   For the reasons set forth in this Complaint, the circumstances are such that it would be inequitable for Defendant to retain the full amount of the benefit conferred upon it by Plaintiff and the Class.

87.   Defendant has wrongfully retained a benefit conferred upon it by Plaintiff and the Class in an amount no less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences Defendant delivered.

88.   WHEREFORE, Plaintiff and the Class seek disgorgement and refund of an amount of money not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences Defendant delivered.

## COUNT III
### Unjust Enrichment

89.   Plaintiff realleges and incorporates into this count the facts alleged in ¶¶ 1–70.

90.   Plaintiff brings this claim individually and on behalf of the Class.

91.   This Count is alleged in the alternative to the claims set forth for legal relief.

92.   Plaintiff and the Class have conferred a benefit on Defendant in the form of tuition and fees for either or both the Spring and Summer 2020 semesters.

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

93.   Defendant was aware of this benefit, voluntarily accepted it, and has retained and appreciated this benefit, to which it is not entitled, at the expense of Plaintiff and the Class.

94.   For the reasons set forth in this Complaint, the circumstances are such that it would be inequitable for Defendant to retain the full amount of the benefit conferred upon it by Plaintiff and the Class.

95.   Defendant has wrongfully retained a benefit conferred upon it by Plaintiff and the Class in an amount no less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences Defendant delivered.

96.   WHEREFORE, Plaintiff and the Class seek disgorgement and refund of an amount of money not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences Defendant delivered.

### COUNT IV
### Conversion

97.   Plaintiff realleges and incorporates into this count the facts alleged in ¶¶ 1–70.

98.   Plaintiff brings this claim individually and on behalf of the Class.

99.   Defendant has wrongfully asserted dominion over the monies Plaintiff and the Class paid in the form of tuition and fees for on-campus educational and social facilities, services, and experiences for either or both the Spring and Summer 2020 semesters.

100.   Plaintiff and the Class maintained a property interest when such monies were paid over to Defendant and Defendant's retention of such monies without delivering a commensurate level of on-campus educational and social facilities, services, and experiences during the Spring and Summer 2020 semesters renders Defendant's retention of, and dominion over, such monies inconsistent with Plaintiff and the Class members' interest in

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

such monies, or such portion of those monies that would be commensurate with the value of the on-campus educational and social facilities, services, and experiences that Defendant failed to deliver or cannot deliver during the Spring and Summer 2020 semesters.

101.   Likewise, by paying such monies to Defendant, Plaintiff and the Class were vested with a right to a level of on-campus educational and social facilities, services, and experiences for either or both the Spring and Summer 2020 semesters commensurate with the amount of monies paid.

102.   Defendant's failure to provide the level of on-campus educational and social facilities, services, and experiences during the Spring and Summer 2020 semesters for which Plaintiff and the Class members paid, and its retention of all monies paid despite this failure on its part, interferes with the Plaintiff's and the Class members' right to and interest in a level of on-campus educational and social facilities, services, and experiences for either or both the Spring and Summer 2020 semesters commensurate with the amount of monies paid.

103.   Defendant's interference with and dominion over Plaintiff's and the Class members' property and property interests, as described herein, entitles Plaintiff and the Class to damages equal to the full value of their property and property interests over which Defendant has wrongfully exercised dominion.

104.   WHEREFORE, Plaintiff and the Class seek disgorgement and refund of an amount of money commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences Defendant delivered.

## PRAYER FOR RELIEF

105.   Plaintiff, individually and on behalf of the Class, respectfully requests that the Court provide the following relief in their favor against Defendant:

      a.   certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing the undersigned counsel as Class Counsel;

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

b. declaring that Defendant is financially responsible for notifying the Class of the pendency of this suit;

c. declaring that Defendant has wrongfully retained monies paid by the Class;

d. awarding injunctive relief, restitution, disgorgement, and quantum meruit relief as permitted by law or equity;

e. awarding Plaintiff's reasonable attorney's fees, costs, and expenses;

f. awarding pre- and post-judgment interest on any amounts awarded, to the extent permitted in law or equity; and

g. awarding such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Individually and on behalf of the Class, Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted: May 14, 2020.

*s/Matthew D. Schultz*
Matthew D. Schultz (FBN 0640328)
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY & PROCTOR, P.A.
mschultz@levinlaw.com
Rebecca K. Timmons (FBN 121701)
rtimmons@levinlaw.com
Brenton J. Goodman (FBN 126153)
bgoodman@levinlaw.com
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel: (850) 435-7140
Fax: (850) 436-6140

*s/ E. Michelle Drake*
E Michelle Drake (PHV forthcoming)
emdrake@bm.net
BERGER MONTAGUE, PC
43 SE Main St., Suite 505
Minneapolis, MN 55414
Tel: (612)594-5900

