**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-CIV-81173-RAR**

**RAYMOND GIBSON**, *individually, and on*
*behalf of all others similarly situated*,

      Plaintiff,

v.

**LYNN UNIVERSITY, INC.**,

      Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

Far from Pink Floyd's admonition that "we don't need no education,"[1] students across the country are vehemently challenging universities' decisions to shut down campuses and move courses online in the face of the COVID-19 pandemic. This class action suit alleges that Defendant Lynn University ("Lynn"), a private university in Boca Raton, Florida, breached its contract with students, or alternatively, was unjustly enriched when it closed its facilities and transitioned to remote learning in March of 2020 as the COVID-19 outbreak accelerated in the United States.

Before the Court is Defendant's Motion to Dismiss Plaintiff's Class Action Complaint [ECF No. 15] ("Motion"), filed on August 31, 2020. The Court having reviewed the Motion, Plaintiff's Response [ECF No. 24], Defendant's Reply [ECF No. 32], the parties' notices of supplemental authority [ECF Nos. 17, 30, 33, 43, and 44], and being otherwise fully advised, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's Class Action Complaint [ECF No. 15] is **DENIED** for the reasons set forth herein.

---

[1] Pink Floyd, Another Brick in the Wall, Pt. 2 (Columbia Records 1979).

## BACKGROUND

Plaintiff Raymond Gibson, an undergraduate student at Lynn, contends that he and similarly situated students contracted with Lynn for "live on-campus instruction and access to campus facilities," and were deprived of the benefit of their bargain when Lynn closed its facilities and moved its courses online due to the COVID-19 pandemic. *See* Am. Compl. ¶ 1, 3. Plaintiff alleges that Lynn's relationship with its students "is based on the terms and conditions set forth *inter alia*, in Lynn's Academic Catalog, in its University Policies, and its invoices, and is informed by Lynn's common course of conduct and procedures." *Id.* ¶ 15. He indicates that Lynn offers students the opportunity to enroll in one of three divisions—the Undergraduate Day Division, the Online Division, and the Graduate Division—and that when students enroll in the Undergraduate Day Division, which costs more per credit than the Online Division, they are specifically contracting with the university to provide in-person instruction and access to campus facilities and activities. *Id.* ¶ 16-22.

Plaintiff contends that Lynn's promises are set forth in a variety of university publications and documents. For example, for students who enroll in the Undergraduate Day Division, Lynn's University Policies expressly state that "[t]he University believes that … the classroom experience is the most important part of the student's educational experience." *Id.* ¶ 30. Lynn's Academic Catalog also indicates that "[t]he student's involvement in classroom activities and discussions is encouraged and expected … [t]herefore, attendance is not only important, but essential to the learning experience." *Id.* ¶ 31. Plaintiff alleges that the Academic Catalog "boasts a rich and lively on-campus student experience," including social activities, intramural sports, and a fitness center. *Id.* ¶ 37. He also asserts that the tuition and fees reflected in his invoice for the Spring

2020 term clearly reflect enrollment in the University's Undergraduate Day Division.  *Id.* ¶ 47. Plaintiff contends that he and similarly situated students are entitled to "the prorated portion of tuition and fees necessary to compensate them for the difference in value between what they bargained and paid for and what they received."  *Id.* ¶ 119.

In its Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), Lynn contends that the Amended Complaint does not allege any contractual provisions requiring Defendant to provide *exclusively* in-person education or requiring a refund of fees.  *See* Mot. at 6-12.  Lynn asserts that, in fact, the University Policies cited by Plaintiff expressly state that "[t]here will be no refund of tuition, [or] fees … in the event the operation of the University is suspended at any time as a result of an act of God, strike, riot, disruption or for any other reasons beyond the control of the University."  *Id.* at 9.

Lynn further argues that Plaintiff fails to allege a material breach and non-speculative damages; that Plaintiff ratified any alleged breach; and that impossibility and/or frustration of purpose bar Plaintiff's breach of contract claim.  *Id.* at 13-17.  Lynn also seeks dismissal of Plaintiff's alternative unjust enrichment claim, arguing that Plaintiff (i) has an adequate remedy at law because of its contractual relationship with Lynn; and (ii) cannot establish that it would be inequitable for Lynn to retain the cost of tuition and other fees for the Spring 2020 semester.  *Id.* at 17-20.

## **LEGAL STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'"  *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombl*y, 550 U.S. 544,

570 (2007)).  "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  When reviewing a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true.  *Id.*  However, a court need not accept plaintiff's legal conclusions as true.  *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009); *see also Iqbal*, 556 U.S. at 678.

Further, when considering a 12(b)(6) motion to dismiss, the court's review is generally "'limited to the four corners of the complaint.'"  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  However, the court may also consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## ANALYSIS

### A.  Breach of Contract

Under Florida law, the elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages.  *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)).  In its Motion, Lynn argues that no contractual provision existed regarding in-person education and that even if such an agreement existed, Plaintiff has not shown a material breach and non-speculative damages.  Lynn further asserts ratification, impossibility, and frustration of purpose defenses.  The Court will address these arguments in turn.

   *i.*     ***Whether Plaintiff sufficiently alleged the existence of a valid contract, a material breach, and damages.***

"Under Florida law, the legal relationship between a private university and a student is 'solely contractual in character.'" *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013) (quoting *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008)). "The university 'may set forth the terms under which it will admit and subsequently graduate students who subject themselves to the rules, regulations and regimen of the college.'" *Id.* (quoting *Univ. of Miami v. Militana,* 184 So. 2d 701, 704 (Fla. 3d DCA 1966)). It is generally accepted that the terms of that contractual relationship "may be derived from university publications such as the student handbook and catalog." *Id.* (citing *Jallali*, 992 So. 2d at 342); *Orzechowitz v. Nova Se. Univ.*, No. 13-62217-CIV, 2014 WL 1329890, at *3 (S.D. Fla. Mar. 31, 2014) ("[A] student handbook or publication can create contractual obligations on the part of university that are not necessarily limited to the 'service' of providing a college degree."); *see also McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006). The university's publications are terms of an "implied-in-fact contract" rather than an express contract. *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1269 (S.D. Fla. 2004); *Williams v. Fla. State Univ.*, No. 4:11-CV-350-MW/CAS, 2014 WL 340562, at *6 (N.D. Fla. Jan. 29, 2014).

Here, Plaintiff alleges that he entered into a binding contract with Lynn for in-person education when he enrolled in and paid for the Undergraduate Day Division. *See* Am. Compl. ¶¶ 16-27. Plaintiff contends that the terms of that contract are dictated by the university's publications, policies, invoices, and the parties' course of conduct. *See id.* ¶ 15. Throughout the Amended Complaint, Plaintiff cites to portions of Lynn's publications and policies that suggest courses would be conducted in-person and students would have access to campus facilities and

activities.  *See id.* ¶¶ 30-41.  At this early stage of the case—given that Florida law recognizes that the university/student contract may be implied in the university's publications—these factual allegations are sufficient to plead the existence of a valid contract for in-person education.

Indeed, two courts applying Florida law recently denied universities' motions to dismiss nearly identical breach-of-contract claims in the COVID-19 context.  *See Rosado v. Barry Univ. Inc.*, No. 1:20-CV-21813, 2020 WL 6438684, at *3 (S.D. Fla. Oct. 30, 2020) (concluding that Plaintiff's "allegations that [Defendant] accepted $773 more per credit for in-person classes from [Plaintiff], and actually provided in-person education to [Plaintiff] until March 19, 2020, in the backdrop of numerous other documents referring to in-person classes and amenities, are sufficient to establish, at minimum, an implied contract."); *Salerno v. Fla. S. Coll.*, No. 8:20-CV-1494-30SPF, 2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020) (finding that Plaintiff's allegations that "the College's publications clearly implied that courses would be conducted in-person" and that the "College's materials also touted its many resources and facilities—all of which were located on the campus thereby implying in-person participation" were sufficient to establish an implied contract).

To be sure, an implied contract between the parties may well have contemplated that the students would bear the risk of a university closure caused by a global pandemic.  As Lynn points out, the University Policies referenced in the Amended Complaint state that "[t]here will be no refund of tuition, [or] fees … in the event the operation of the University is suspended at any time as a result of an act of God, strike, riot, disruption or for any other reasons beyond the control of the University."  ("*Force Majeure* Provision").  Plaintiff insists that this *Force Majeure* Provision does not apply to the facts in this case because Lynn's operations were not entirely "suspended,"

but instead moved online.  *See* Resp. at 15.  However, under Plaintiff's reading of the provision, if Lynn had shut down *entirely*, it would be entitled to keep all tuition and fees—but because Lynn opted to provide some continuity for its students through remote learning, it is required to provide prorated refunds.  The Court is unconvinced that the *Force Majeure* Provision should be construed to produce such illogical results.

Nevertheless, a determination of whether the *Force Majeure* Provision or other statements in Lynn's policies and publications foreclose Plaintiff's breach-of-contract claim is more appropriate at the summary judgment stage.  Although Plaintiff has sufficiently pleaded the existence of a contract for in-person education, this is not necessarily "a typical contract situation where there is an express document with delineated terms that a plaintiff can reference." *Salerno*, 2020 WL 5583522, at *5.[2]  Therefore, further factual development is needed to clarify the terms and conditions that govern the parties' relationship.  *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 n.3 (11th Cir. 2012) ("In Florida, whether a contract is implied in fact is inferred from the

---

[2]  In its Reply, Lynn argues for the first time that the Financial Responsibility Agreement attached to one of its Notices of Supplemental Authority [ECF No. 17] is in fact the controlling express contract between the parties—and the Court should therefore reject Plaintiff's argument that there was an implied contract. *See* Reply at 5-6.  However, the Financial Responsibility Agreement is not referenced in Lynn's Motion, and the Court will not entertain arguments raised by Lynn for the first time in its Reply, thereby foreclosing Plaintiff's opportunity to respond.  *See Tafel v. Lion Antique Investments & Consulting Servs.*, 459 F. App'x 847, 849 (11th Cir. 2012) ("The district court had no obligation to consider an argument raised for the first time in the reply brief."); *see also Thuan Viet Doan v. United States*, No. 18-21841, 2018 WL 4953353, at *5 (S.D. Fla. Oct. 12, 2018); *Grant v. Miami-Dade Cty.*, No. 13-22008, 2014 WL 11412699, at *3 (S.D. Fla. Mar. 4, 2014).  Even if the Court were to consider this argument, upon construing the facts in the light most favorable to Plaintiff—as the Court must do at this stage—it is not clear that the Financial Responsibility Agreement exclusively governs the subject of this dispute—*i.e.*, whether Plaintiff contracted with Lynn for in-person learning and access to Lynn's campus facilities and which party was intended to bear the financial risk of an event like a pandemic.  In the case Lynn relies on, plaintiffs had specifically alleged a breach of the Financial Responsibility Agreement, so the governing contractual terms were not in dispute as they are here.  *See Chong v. Ne. Univ.*, No. CV 20-10844, 2020 WL 5847626, at *2 (D. Mass. Oct. 1, 2020).

facts and circumstances of the case.") (internal quotation omitted); *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 275 F. Supp. 3d 1332, 1342 (S.D. Fla. 2017) ("Typically, in [implied-in-fact] contracts, the parties have in fact entered into an agreement, but without sufficient clarity, so a fact finder must examine and interpret their conduct to define their unspoken agreement."); *Willis of Fla., Inc. v. All Risks, Ltd.*, No. 2:12-CV-14148, 2012 WL 5504786, at *3 (S.D. Fla. Nov. 13, 2012) (denying Defendant's motion to dismiss Plaintiff's claim for breach of an implied-in-fact contract "because Defendant is attacking the merits of Plaintiff's claim and the 'examination of the parties' conduct is a fact-based inquiry, something that cannot be resolved in a motion to dismiss.'") (quoting *Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co.*, No. 07-80091, 2007 WL 1099124, at *2 (S.D. Fla. Apr. 10, 2007)); *see also Rosado*, 2020 WL 6438684, at *4 (S.D. Fla. Oct. 30, 2020) (noting that discovery may reveal whether "the contractual provisions referenced by [the university] govern this dispute.").

The lack of clarity regarding precisely which terms control this dispute is evidenced by the parties' pleadings. Plaintiff's Amended Complaint cites to the University Policies, among other documents, to support the existence of a contract for in-person education. *See* Am. Compl. ¶¶ 15, 30, 38, 40, and 106. However, when confronted with the *Force Majeure* Provision, Plaintiff disavows those same policies, pointing to a disclaimer stating that the policies "do[] not create an express or implied contract." *See* Resp. at 15. Conversely, Lynn contends that Plaintiff is bound by the *Force Majeure* Provision found in the University Policies, *see* Mot. at 9-10 and 18-19, but then insists in its Reply that the controlling terms are those found in the Financial Responsibility Agreement, which does not appear to incorporate the language of the *Force Majeure* Provision. *See* Reply at 5-6; Statement of Financial Responsibility [ECF No. 33-1]. Thus, the universe of

terms and conditions governing the parties' relationship is a disputed matter to be resolved when the full factual record is before the Court—not on a motion to dismiss.[3]

The Court is also unpersuaded by Lynn's position that Plaintiff has not sufficiently pleaded materiality and damages.  Lynn argues that if it breached its contractual duty by transitioning to remote learning, the breach was minimal and did not go to the essence of the bargain because students still received education and credits.  *See* Mot. at 13.  Borrowing Judge Martinez's apt analogy from *Rosado*, "This is kind of like purchasing a Cadillac at full price and receiving an Oldsmobile.  Although both are fine vehicles, surely it is no consolation to the Cadillac buyer that the 'Olds' can also go from Point A to Point B."  *Rosado*, 2020 WL 6438684, at *4.  Moreover, Plaintiff has cited various statements by Lynn emphasizing the importance of campus life and the classroom experience and has pointed to the differences in the market value of Lynn's online program versus its on-campus program.  *See* Am. Compl. ¶¶ 30-37, 46.  With respect to damages, Plaintiff asserts that he is entitled to the "prorated portion of tuition and fees necessary to compensate him" for the difference in value between the in-person, on-campus education he bargained for and what he received.  *Id.* ¶ 119.  At this stage, such allegations are enough to draw

---

[3] The Court notes that even when included in an undisputed *express* contract between parties, *force majeure* provisions are "narrowly construed" and "will generally only excuse a party's nonperformance if the event that caused the party's nonperformance is specifically identified."  *See ARHC NVWELFL01, LLC v. Chatsworth at Wellington Green, LLC*, No. 18-80712, 2019 WL 4694146, at *3 (S.D. Fla. Feb. 5, 2019). Although "[p]recedent on the enforcement of force majeure clauses is limited in Florida," *id.*, this District, upon addressing the applicability of a *force majeure* clause in the context of COVID-19 regulations, has found it to be "a factual question that cannot be determined on a motion to dismiss."  *Palm Springs Mile Assocs., Ltd. v. Kirkland's Stores, Inc.*, No. 20-21724, 2020 WL 5411353, at *2 (S.D. Fla. Sept. 9, 2020). Here, the Court is similarly reluctant to assess the applicability of the *Force Majeure* Provision without the benefit of a full factual record, particularly considering that: (i) the *Force Majeure* Provision is found in a policy that purports not to create an express or implied contract; and (ii) government orders and guidance concerning COVID-19 are constantly evolving.

reasonable inferences that the alleged breach was not trivial and that damages flowed from the breach.

The Court emphasizes that this is not a case about the quality of the education Lynn provided students during the Spring 2020 semester.  Lynn is correct that Florida does not recognize a cause of action for educational malpractice.  *See McCurdy v. Virginia Coll., LLC*, No. 3:17-CV-562-J-32JBT, 2018 WL 1886579, at *4 (M.D. Fla. Mar. 7, 2018).  Rather, Plaintiff's claim is based on Lynn's alleged failure to provide in-person, on-campus instruction and access to campus facilities and resources.  To be clear, the Court does not opine on the merits of this breach of contract claim at this stage of the proceedings.  It simply finds that the elements of the claim have been sufficiently pleaded, particularly considering that Florida law recognizes an implied contractual relationship between a university and its students derived from the university's publications.

> ii.    *Whether Plaintiff's breach of contract claim is barred by impossibility of performance or frustration of purpose.*

"Under the doctrine of impossibility of performance or frustration of purpose, a party is discharged from performing a contractual obligation which is impossible to perform and the party neither assumed the risk of impossibility nor could have acted to prevent the event rendering the performance impossible."  *Marathon Sunsets, Inc. v. Coldiron*, 189 So. 3d 235, 236 (Fla. 3d DCA 2016).  "[N]ormally an affirmative defense cannot be decided at the motion to dismiss stage."  *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 994 (11th Cir. 2014).  However, "[a] complaint is subject to dismissal for failure to state a claim when its allegations, on their face, show that an affirmative defense bars recovery on the claim."  *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (internal quotation and citation omitted).

Lynn argues that impossibility and frustration of purpose are evident on the face of the Amended Complaint.  *See* Mot. at 16.  Lynn contends that the Court "can take judicial notice of the existence of the basis for the frustration of purpose and impossibility affirmative defenses" and cites to orders from the Governor of Florida and the Palm Beach County government mandating certain closures due to COVID-19.  *Id.* at 16.  However, as discussed above, at this stage in the litigation, significant questions remain as to which contractual provisions govern the parties' dispute and when they came into effect.  Until those questions are resolved, the Court is unable to definitively ascertain which party assumed the risk of impossibility.  *See Rosado*, 2020 WL 6438684, at *5.   Although the *Force Majeure* Provision in the University Policies suggests that students may have assumed the risk, the University Policies also purport not to create an express or implied contract, so it is unclear at this juncture the extent to which those policies formed the parties' contractual expectations.  *See, e.g., Incwebs, Inc. v. First Student, Inc.*, No. 8:15-CV-1661-T-33TGW, 2016 WL 727577, at *4 (M.D. Fla. Feb. 24, 2016) (denying motion to dismiss implied-in-fact contract claim based on terms in letter of intent that purported not to create a binding agreement between the parties).  Accordingly, the Court finds that the facts alleged in the pleadings do not conclusively establish that Plaintiff's breach of contract claim is barred by impossibility or frustration of purpose.

       *iii.*       *Whether the pleadings establish that Plaintiff ratified the alleged breach.*

Lynn further argues that Plaintiff's breach of contract claim is barred because Plaintiff ratified the allegedly breaching conduct by continuing to attend courses remotely and accepting credits.  *See* Mot. at 16.  "Ratification is conduct that indicates an intention, with full knowledge of the facts, to affirm a contract which the person did not enter into or which is otherwise void or

voidable." *Citron v. Wachovia Mortg. Corp.*, 922 F. Supp. 2d 1309, 1321–22 (M.D. Fla. 2013); *see also Zurstrassen v. Stonier*, 786 So. 2d 65, 71 (Fla. 4th DCA 2001) ("Ratification occurs where a party with full knowledge of all the material facts makes an affirmative showing of his or her express or implied intention to adopt an act or contract entered into without authority.").

The Court disagrees that the issue of ratification is established on the face of the pleadings. It is not apparent from the allegations in the Amended Complaint what information was conveyed to students at the time Lynn moved its courses online or what actions, if any, Plaintiff took upon learning of the transition. Nor do the pleadings show that Plaintiff knew he could reject the contract at any point during the Spring semester. *See In re Standard Jury Instructions–Contract & Bus. Cases*, 116 So. 3d 284, 328–29 (Fla. 2013) (ratification occurs where (1) a defendant performs an act which breached contract; (2) plaintiff knew of the act and that he could reject the contract because of the act; and (3) plaintiff accepted the act). Without a developed factual record, the Court cannot ascertain whether Plaintiff affirmatively manifested an intent to approve Lynn's actions with "full knowledge of all the material facts." *See First Sw. Fin. Servs., LLC v. Best Light, LLC*, No. 13-20049, 2015 WL 13777174, at *12 (S.D. Fla. Feb. 6, 2015) ("While ratification need not be expressed in words, there must be some intelligent act or conduct of the principal, made with a full knowledge of the facts, which clearly shows an intention to be bound.") (internal quotation and citation omitted).

Here, the Court will not draw the conclusion that Plaintiff relinquished his contractual remedies solely based on allegations that he did not—in the face of an unpredictable, novel, and rapidly evolving pandemic—quit school mid-semester and risk forfeiting his tuition. *See Rosado*, 2020 WL 6438684, at *5.

### B. Unjust Enrichment

Lynn maintains that Plaintiff's unjust enrichment claim should be dismissed because: (1) the relationship between students and an institute of higher education is contractual in nature and unjust enrichment can only survive where there is no adequate remedy at law; and (2) Plaintiff has not established that it would be inequitable for Lynn to retain the cost of tuition and other fees for the Spring 2020 semester.

Unjust enrichment may be properly pleaded where "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009) (quotation omitted). Although a party may only recover under an unjust enrichment theory when there is no valid express or implied-in-fact contract, unjust enrichment and breach of contract may be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid. *See Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011); *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013).

Here, the Court finds it premature to dismiss Plaintiff's unjust enrichment claim. Although Lynn does not dispute that the relationship between a university and its students is contractual in nature, it vehemently disputes the existence of a contract for in-person education. *See* Mot. at 6-7. Furthermore, in its Reply, Defendant argues that the Court should "reject Plaintiff's invitation to manufacture an implied contract" because the Financial Responsibility Agreement constitutes

an express agreement between the parties governing the same subject matter.  *See* Reply at 6, n.5. Thus, although the Amended Complaint adequately *pleads* the existence of a valid implied-in-fact contract, an undisputed express or implied-in-fact contract has yet to be established at this stage in the proceedings—and, therefore, dismissal of Plaintiff's unjust enrichment claim is not warranted. *See Raven v. Lincoln Nat. Life Ins. Co*., No. 07-23137-CIV, 2011 WL 5553837, at *7 (S.D. Fla. Nov. 15, 2011) ("It is only upon a showing that an express contract exists that the unjust enrichment … count fails.") (internal quotation marks and citation omitted); *Martorella*, 931 F. Supp. 2d at 1228 ("[I]t is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails."); *see also Salerno*, 2020 WL 5583522, at *5 (denying motion to dismiss student's alternative unjust enrichment claim); *Rosado*, 2020 WL 6438684, at *5 (same).

Without opining on the merits of Plaintiff's unjust enrichment claim, the Court also finds that Plaintiff has adequately pleaded it would be inequitable for Lynn to retain the full tuition and fees paid by him and similarly situated students for the full Spring 2020 semester.  Plaintiff has alleged that the tuition and fees were at least in part intended to cover services, resources, and access to facilities that Lynn did not provide or only partially provided.  At this stage in the litigation, these allegations are sufficient to state a plausible claim for unjust enrichment.

## **CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.  Lynn's Motion to Dismiss Plaintiff's Class Action Complaint [ECF No. 15] is **DENIED**.

2.  The stay of discovery imposed by the Court in its Order dated October 29, 2020 [ECF No. 40] is hereby **LIFTED**.

3. On or before **December 14, 2020**, Plaintiff shall file a Second Amended Complaint removing claims concerning the Summer 2020 term given Plaintiff's concession that he does not have an actionable claim for that term.  *See* Resp. at 20, n.24.


**DONE AND ORDERED** in Fort Lauderdale, Florida, this 29th day of November, 2020.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**